UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-1444-GW-KSx | Date | October 1, 2019 |
|---|---|---|---|
| Title | *BlackBerry Limited v. Twitter, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON DEFENDANT TWITTER, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) [39]

Attached hereto is the Court's Final Ruling. Defendant's Motion is GRANTED IN PART and DENIED IN PART.

:

Initials of Preparer   JG

<u>**BlackBerry Limited v. Twitter, Inc.**</u>; Case No. 2:19-cv-01444-GW-(KSx)
Final Ruling on Motion to Dismiss First Amended Complaint

### I. Background

Plaintiff BlackBerry Limited ("BlackBerry") filed suit against Twitter, Inc. ("Twitter") on February 27, 2019, alleging infringement of seven patents. Docket No. 1; *see also* Docket No. 36 (First Amended Complaint).

Twitter has moved to dismiss all of BlackBerry's patent infringement claims under 35 U.S.C. § 101. Docket No. 39-1. Twitter's motion has been fully briefed. *See* BlackBerry's Opposition in support of Twitter's Motion to Dismiss, Docket No. 40; Twitter's Reply in support of its Motion to Dismiss, Docket No. 43.

For the reasons stated in this Order, the Court would **DENY-IN-PART** and **GRANT-IN-PART with or without leave to amend, depending on the particular patent,** as further articulated herein.

### II. Legal Standard

A. <u>Motion to Dismiss (Rule 12(b)(6))</u>

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A court is not required to

1

accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a Rule 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citations omitted).

B. Patent Eligibility under 35 U.S.C. § 101

An invention or a discovery is patentable if it is a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "In choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Still, the Supreme Court has identified exceptions to this wide scope to distinguish patents that claim the building blocks of human ingenuity, which are ineligible for patent protection, from those that "integrate the building blocks into something more." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 89 (2012)) (internal quotations omitted). These exceptions to patent protection are "laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). While the boundaries of the judicial exceptions remain subject to further development, the Supreme Court has clearly delineated the policy underlying those exceptions: avoiding patents that "too broadly preempt the use of a natural law [or abstract idea]." *Mayo*, 566 U.S. at 73. Thus, patent law should "not inhibit further discovery by improperly tying up the future use of laws of nature [or abstract ideas]." *Id.* at 1301.

In *Mayo*, the Supreme Court "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. The first step is to ask "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If not, the claims fall within the scope of § 101 and are patent-eligible. If the claims are directed to one of the exceptions, the next step is to search for an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself." *Mayo*, 566 U.S. at 72-73. In doing so, a court must "consider the elements of each claim both

2

individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78-79). If, in considering the claim elements individually and as an ordered combination, they merely recite well-understood, routine, and conventional steps, they will not constitute an inventive concept for patent eligibility purposes. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Id.*; *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Like indefiniteness, enablement, or obviousness, whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts.").

**III. Discussion**

    A. <u>Introduction and Determinations Regarding the '351, '929, '120, '089, and '059 Patents</u>

This will be the third time the Court has had occasion to review various patents assigned to BlackBerry. About a year before this case was filed, BlackBerry filed patent infringement actions against Snap, Inc. and certain Facebook, Inc. entities and affiliates. Those cases are also before this Court. *BlackBerry Limited v. Facebook, Inc. et al*, Case No. 2:18-cv-01844-GW-(KSx) ("*Facebook Case*"); *BlackBerry Limited v. Snap Inc.*, Case No. 2:18-cv-02693-GW-(KSx) ("*Snap Case*"). Concurrently with this ruling, the Court has prepared and will issue a final ruling addressing three § 101 summary judgment motions in those other cases. The determinations reached therein, as well as certain determinations that were reached by the Court in resolving similar § 101 motions to dismiss previously brought by Snap and Facebook Defendants, are relevant to the parties' dispute here. *See Facebook Case*, Docket No. 68.

Directly relevant, in its concurrently-issued final ruling in the *Facebook Case*, the Court has found the asserted claims of U.S. Patent Nos. 8,296,351 and 8,676,929 patent-ineligible at the summary judgment stage. As directed by the Court, BlackBerry and Twitter have filed short briefs stating that the rulings in the *Facebook Case* regarding those patents should "apply equally to Twitter's motion in this case." Docket No. 49 at 1 (BlackBerry's supplemental brief); *see also* Docket No. 50 (Twitter's supplemental brief, articulating same). The Court would **GRANT** Twitter's motion to dismiss related to these patents. Without objection from BlackBerry in its supplemental brief (Docket No. 49), the Court would find the claims determined patent ineligible in the *Facebook Case* for the '351 and '929 Patents representative of the other claims of those

3

patents to the extent they are at issue in Twitter's motion to dismiss (and specifically Claim 10 of the '929 Patent (*see* Docket No. 50 at 4-5)). The Court agrees with Twitter that based on the procedural posture of this dispute, leave to amend as to these two patents would be futile, and dismissal is thus **WITH PREJUDICE**.

Also directly relevant, in both its previous ruling on Facebook Defendants' § 101 motion to dismiss and in its concurrently-issued ruling in the *Facebook Case* regarding a § 101 motion for summary judgment, the Court found the asserted claims of U.S. Patent Nos. 9,349,120 not drawn to an abstract idea under *Mayo/Alice* Step One. The Court would specifically incorporate by reference the analysis provided in each of its other § 101 rulings regarding the '120 Patent, and for the same reasons discussed in those rulings would **DENY** Twitter's motion to dismiss as it relates to the '120 Patent.

The Court has not previously reviewed the other four asserted patents raised by Twitter's motion to dismiss. However, the Court finds for at least some of these newly-disputed patents, its previous analysis is equally instructive as to the appropriate outcome at the pleading stage.

For U.S. Patent No. 8,286,089, the Court again specifically incorporates by reference the analysis provided in each of its previous § 101 rulings regarding the '120 Patent. Particularly at the pleading stage, the parallels between the '089 and '120 Patents[1] put the '089 Patent similarly under the purview of the claims held non-abstract at Step One in *Core Wireless*. *See Core*

---

[1] Claim 1 of the '089 Patent states:

> 1. A method of representing new electronic messages on a communication device having a display, the method comprising:
>    receiving a new electronic message;
>    setting a new message flag to indicate receipt of the new electronic message;
>    representing, on a home screen displayed on the display, a new message indicator when the new message flag is set;
>    receiving an invocation to switch the home screen displayed on the display to a message inventory display screen for viewing a listing including a plurality of electronic messages including the new electronic message, the message inventory display screen displaying a preview, for each listed electronic message, of either a subject line or of a portion of contents of the electronic message, the contents of an electronic message being accessible upon receipt of a request to open an electronic message from the list of messages;
>    unsetting the new message flag in response to the invocation to switch the home screen displayed on the display to the message inventory display screen, the unsetting of the flag occurring without having received a request to open the new electronic message; and
>    receiving an invocation to switch the message inventory display screen to the home screen, wherein the new message indicator represented on the home screen is not displayed as a result of the unsetting of the new message flag.

'089 Patent, Claim 1.

*Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018). Even if the claims are abstract at *Mayo/Alice* Step One, the Court would find that § 101 analysis at the motion to dismiss stage is premature, as factual questions likely exist at *Mayo/Alice* Step Two would preclude dismissal. *See Aatrix*, 882 F.3d at 1128. The Court would **DENY WITHOUT PREJUDICE** Twitter's motion as to the '089 Patent.

U.S. Patent No. 9,021,059 relates to the transmission of content and notifications via a specific arrangement of network components.[2] Sufficient Federal Circuit cases exist for the proposition that a specific arrangement and relationship among networked components may be patent-eligible as drawn to a technologically improved or unconventional distributed architecture, whether it be at *Mayo/Alice* Step One or Two, for the Court to deem it premature at this stage of litigation to consider the patent eligibility of these claims. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed. Cir. 2017); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The Court would **DENY WITHOUT PREJUDICE** Twitter's motion as to the '059 Patent.

For U.S. Patent No. 8,572,182, there are also parallels to BlackBerry patents previous considered by the Court, but this time to a patent about setting time stamps that the Court found patent-ineligible at the motion to dismiss stage. *Facebook Case*, Docket No. 68 at 13-18. The Court will thus address the parties' dispute regarding this patent in greater detail herein.

Finally, for U.S. Patent No. 8,825,777, further discussion is also warranted.

B.  U.S. Patent No. 8,572,182

    *1. Background of the Patent and the Asserted Claims*

The '182 Patent issued October 29, 2013 and is titled "Handling Notifications in Instant

---

[2] Claim 1 of the '059 Patent states:

  1. A method comprising:
      making informational content, selected in a first mobile wireless device, available to a second mobile wireless device using a data hub server;
      receiving a representation of the informational content in the data hub server in a directed transmission from a first server to the data hub server, the first mobile wireless device being a client of the first server; and
      transmitting notification of the informational content being available to the second mobile wireless device using a directed transmission from the data hub server to a second server, the second mobile wireless device being a client of the second server, the first server being separate from the second server.

'059 Patent, Claim 1.

Messaging Systems."

BlackBerry alleges that Twitter infringes "at least claims 1 and 4 of the '182 Patent." FAC, Docket No. 36 ¶ 186. Claim 1 of the '182 Patent recites:

> 1. A method in a first communication device for reducing communications in an instant messaging conversation between said first device and a second communication device, the method comprising:
> sending to said second device, a plurality of instant messages of said conversation;
> receiving from said second device, after sending said plurality of instant messages, at least a notification of the status of only a particular one of said plurality of instant messages sent by said first device to said second device without having previously received a notification of the status of any of said plurality of instant messages sent prior to said particular one of said plurality of instant messages; and
> in response to receipt of said notification, a processor updating an internal record to reflect said status for said particular one of said plurality of instant messages and to reflect an inferred status for all of said plurality of instant messages of said conversation sent prior to said particular one of said plurality of instant messages.

'182 Patent, Claim 1.

Claim 4 of the '182 Patent relates to "[a] non-transitory computer-readable medium having computer-executable instructions," but otherwise includes substantially similar method steps compared to the steps in Claim 1.

Twitter limits its motion to dismiss arguments specifically to discussing Claims 1 and 4 of the '182 Patent, including based on the assertion that Claim 1 is representative of Claims 1 and 4. *See, e.g.* Docket No. 39-1 at 7, 7 n.1, 8. The Court agrees with Twitter that Claim 1 is representative of Claims 1 and 4, and as to these particular claims, rejects BlackBerry's generalized objection to the contrary. *See* Docket No. 40 at 6-7; *see also, e.g. Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

### 2. *Mayo/Alice* Step One

As mentioned, the Court finds Claims 1 and 4 of the '182 Patent highly reminiscent of claims in one of BlackBerry's other patents involving selectively placing time stamps on instant

6

messages:

> Although BlackBerry places emphasis on the purported invention's selective *display* of the timestamp, at least Claim 1 of the '713 Patent does not provide any information about how or where a timestamp is actually displayed on the device. [Footnote omitted.] To the extent BlackBerry would take the position that a claim's sole recitation that a component must be displayed is sufficient to confer patentability even when there is no basis to find that the display confers a technological improvement, this is contradicted by the caselaw. *See, e.g.*, [*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344 (Fed. Cir. 2018)]. Indeed, the '713 Patent specification shows that, at least as to the independent claims, there is no required format for displaying the time stamp. '713 Patent at 7:34-37 ("[T]he appearances of the various time stamps herein [are] completely exemplary, and . . . the time stamps could be provided in any format without departing from the concept of the invention.") . . . . Claim 1 could cover embodiments where a displayed timestamp still takes up so much screen real estate on a mobile device that there is no optimization; there are simply no limits on the face of the claim as to how a timestamp must be displayed on a screen. [Footnote omitted.]
>
> The fact that the display of the claimed timestamps is dependent on a specific rule (of setting a "predetermined duration of time") also fails to save the claims from being abstract. Again, there is nothing that ties the rule to a technological improvement. The language of Claim 1 is broad enough that it would cover embodiments that may not actually improve when timestamp information is displayed. In its Opposition, BlackBerry effectively concedes that there are no limits on what constitutes a "predetermined duration of time." [Citations omitted.] Thus, the '713 Patent could cover predetermined time durations set to both miniscule and enormous lapses in time. BlackBerry provided no basis in its papers or at the hearing as to how these embodiments on the far ends of the spectrum would provide a technological improvement in the way time stamp information is displayed on a mobile device. And as the Federal Circuit has previously found, the use of a rule alone does not necessarily make a set of claims non-abstract. [Footnote omitted;] *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) ("*Symantec*") (rejecting patentee's argument at step two that claims were patent eligible because they applied business rules to email and finding claims drawn to patent-ineligible concept of screening emails); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016) ("Although FairWarning's claims require the use of a computer, it is this incorporation of a computer, *not* the claimed rule, that purportedly "improve[s] [the] existing technological process" by allowing the automation of further tasks.") *cf. McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (Federal Circuit finding on Rule 12(c) motion that claims were not drawn to patent-ineligible concept where they relied on a first set of rules to automate lip synchronization, where there was no

7

>evidence that prior art animators were employing the same type of rules required by the claims and stating, "[t]his is unlike *Flook*, *Bilski*, and *Alice*, where the claimed computer-automated process and the prior method were carried out in the same way.").

*Facebook Case*, Docket No. 68 at 14-16.

In regards to Claims 1 and 4 of the '182 Patent, BlackBerry itself acknowledges that, as explained in the '182 Patent, prior art instant message ("IM") systems handled the issue of a sender not knowing if someone has received, read, or begun responding to the sender's IM "by providing senders 'Message_Delivered,' 'Message_Read,' 'Typing_Started,' and 'Typing_Stopped' notifications for *each message* exchanged between devices." Docket No. 40 at 21 (emphasis in original) (citing '182 Patent at 1:22-32). It seems that the only purported improvement BlackBerry asserts is recited by the claims is based on a rule outlining when to send such prior art status notifications. On this basis, BlackBerry argues that "Claim 1, among others, embodies [an] architecture to reduce redundant notifications." *Id.*

BlackBerry, however, fails to explain how the problem of redundant status notifications is a technological problem, let alone how the claims recite a solution that represents a technological improvement. Reducing redundant information is an inherently abstract goal. That the claims carry out that goal in the context of an instant messaging environment does not change the outcome, as "limiting the claims to [a] particular technological environment[,] . . . is, without more, insufficient to transform [the claims] into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258-59 (Fed. Cir. 2016) ("To be sure, the '379 patent claims the wireless delivery of regional broadcast content only to cellphones . . . . That restriction, however, does not alter the result. All that limitation does is to confine the abstract idea to a particular technological environment − in this case, cellular telephones."). Moreover, the claims' purported solution would broadly cover any type of notification displayed in any form, so long as for groups of instant messages, the notification is not displayed until the last message in the group is sent. Similar to the determination reached for the '713 Patent, such a result-focused, general requirement for a "notification" further supports the conclusion that the claims fail to recite a specific, technological improvement to instant messaging systems as tools. *Elec. Power*, 830 F.3d at 1354 (The present case is different: the focus of the claims is not on such an improvement in computers as tools, but on certain

8

independently abstract ideas that use computers as tools."). And importantly, like the '713 Patent, the fact that the claims set up a generic rule for when to display a notification is not sufficient to save the claims from abstraction. *See, e.g. Symantec*, 838 F.3d at 1318.

In these claims, BlackBerry's assertion that performing the claimed steps leads to reduced bandwidth usage for status notifications does not change the outcome, but instead is merely a benefit that flows from performance of the abstract idea. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("These benefits, however, are not improvements to database functionality. Instead, they are benefits that flow from performing an abstract idea in conjunction with a well-known database structure."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("*Capital One*") (noting with respect to Step Two that "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept."). Further, although BlackBerry makes these assertions about bandwidth savings, there are no limitations in the claims that specifically address these problems or would necessarily support these improvements. *See Symantec*, 838 F.3d at 1316 ("Finally, IV argues that the ′050 patent 'shrink[s] the protection gap and moot[s] the volume problem' . . . . However, the asserted claims do not contain any limitations that address the protection gap or volume problem, e.g., by requiring automatic updates to the antivirus or antispam software or the ability to deal with a large volume of such software."). Again importantly and like the '713 Patent, without limitations for where or how a notification is displayed or provided to an instant message sender, the argument that the notification always necessarily reduces bandwidth is not persuasive.

Having concluded that the claims are drawn to the abstract idea of reducing redundant notifications, the Court proceeds to *Mayo/Alice* Step Two.

### 2. *Mayo/Alice* Step Two

BlackBerry's *Mayo/Alice* Step Two argument is short enough to reproduce in full:

> Twitter also fails to meet its burden at step two. As discussed at step one, the inventions make specific improvements to prior art IM systems. *See, e.g.*, '182 patent at claims 1, 4. Twitter offers nothing to demonstrate the claimed elements individually or as a combination were "well-understood, routine, and conventional activities previously known to the industry." *Aatrix*, 882 F.3d at 1128. BlackBerry has specifically identified limitations in its status notification mechanism which operate together to reduce redundant notifications and conserve precious computation resources, "a specific and substantial improvement over prior messaging notification

9

> systems." Dkt. 36 ¶¶ 180-182. These allegations preclude dismissal at step two. [*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317-18 (Fed. Cir. 2019)]; *Aatrix*, 882 F.3d at 1126-28.

Docket No. 40 at 22-23. BlackBerry's cited paragraphs in its FAC either: (1) state in a conclusory fashion that certain claim limitations are non-routine and unconventional, without explaining how so or (2) refer back to the same arguments presented by BlackBerry in Step One, *i.e.* that the claims result in "more efficient use of system bandwidth." *See, e.g.* FAC, Docket No. 36 ¶ 182. BlackBerry's allegations are insufficient to manufacture a question of fact at *Mayo/Alice* Step Two. *BSG*, 899 F.3d at 1291; *see also id.* at 1290 ("it has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

Because the Court finds that Claims 1 and 4 of the '182 Patent are drawn to an abstract idea and there are no well-pled factual allegations in the FAC to support an assertion that the claim components, considered individually and as an ordered combination, recite significantly more than routine, conventional, or well-understood material,[3] the Court would **GRANT** Twitter's motion as to Claims 1 and 4 of the '182 Patent and accordingly find that BlackBerry's infringement claims with respect to the '182 Patent must be dismissed.

C. U.S. Patent No. 8,825,777

*1. Background of the Patent and the Asserted Claims*

The '777 Patent is titled "Selective Delivery of Social Network Messages Within a Social Network." It issued on September 2, 2014.

BlackBerry alleges that Twitter infringes "at least Claims 1, 10, and 19 of the '777 Patent." FAC, Docket No. 36 ¶ 213.

Claim 1 of the '777 Patent states:

> 1. A method of managing electronic communications within a social group of a social network, comprising:
> monitoring messages communicated within the social group;
> determining content shared by a number of messages communicated within the social group, wherein the number of messages sharing the determined content satisfies at least one of:

---

[3] The Court notes that BlackBerry did not adequately or sufficiently assert at either Step One or Step Two that the claim limitation requiring a processor to update a record, including with an "inferred status" for the messages where a notification was not sent, conveys patent eligibility. Based on the Court's review, this limitation appears to simply provide generic post-solution activity rather than meaningfully figure into the § 101 dispute for these claims.

10

> > a growth rate of the number of messages meets or exceeds a growth rate threshold; and
> >
> > the number of messages meets or exceeds a message quantity threshold;
> 
> determining whether one or more new messages to be communicated to one or more members of the social group comprises content similar to the determined content; and
> 
> selectively adjusting notification of the one or more new messages to the one or more members of the social group in response to determining that the one or more new messages to be communicated to the one or more members of the social group comprises content similar to the determined content.

'777 Patent, Claim 1.  Claim 10 refers to "[a] social network server coupled to a communications network that facilitates exchange of electronic communications within a social group of the communications network."  It requires a processor and a memory coupled to the processor, where the memory is configured to perform substantially the same steps recited in Claim 1.  Claim 19 refers to "[a] non-transitory computer-readable medium having computer-executable instructions for causing a server comprising a processor and associated memory to manage electronic communications within a social group of a social network," requiring that the instructions are the same as the method steps recited in Claim 1.

Like its arguments regarding the '182 Patent, Twitter again appears to limit its motion to dismiss arguments specifically to Claims 1, 10, and 19 of the '777 Patent.  *See, e.g.*, Docket No. 39-1 at 17.  Twitter treats Claim 1 as representative of Claims 1, 10, and 19.  *Id.* at 14.  The Court again agrees with Twitter that Claim 1 is representative of Claims 1, 10, and 19, and rejects BlackBerry's generalized objection to the contrary for these particular claims.  *See* Docket No. 40 at 6-7; *see also, e.g.*, *Berkheimer*, 881 F.3d at 1365.

> 2. *Mayo/Alice* Step One

Claims 1, 10, and 19 of the '777 Patent have similar § 101 shortcomings to Claims 1 and 4 of the '182 Patent.  BlackBerry characterizes the '777 Patent as "refin[ing] the quality of messages sent over a social network by specifically handling notifications of messages that may harm the network or its users, while preserving network resources and bandwidth by curbing the continued proliferation of such content and creating a better experience for users consuming information from around the Internet."  Docket No. 40 at 27-28.  BlackBerry refers to a portion of the patent specification that states: "[w]ith the ability of social network users to easily and in real-time copy and re-transmit popular messages from one user to a multitude of other users, as

11

is the case of re-tweeting on Twitter, for example, the potential reach of such re-postings within the social group or network can be exponential, presenting a significant hazard to bandwidth and other traffic resources of the network." '777 Patent at 1:52-58.

However, the focus of the patent claims appears analogous to determining that a heckler's increased, repeated comments at a rally require some intervention by event security. In the same way, an employee for a celebrity faced with incoming hate mail or fan mail may monitor the mail and "selectively adjust[ ]" what mail to share with his or her celebrity employer, after determining the mail has exceeded a certain threshold. Twitter also provides an analogy to a city council-person receiving a flood of incoming calls that are screened by a staff member. As Twitter explains, "[t]he mere fact that computer-implemented communications may enable age-old problems to proliferate more quickly does not make those problems 'technological.'" Docket No. 43 at 19. The Court agrees. Limiting the idea of monitoring and curbing content notifications to an online social network environment does not change the nature of the claims to become non-abstract. *Elec. Power*, 830 F.3d at 1354; *Affinity Labs*, 838 F.3d at 1258-59.

As with the '182 Patent, BlackBerry's arguments about bandwidth savings are again unpersuasive. *BSG*, 899 F.3d at 1288 ("These benefits . . . . are benefits that flow from performing an abstract idea in conjunction with a well-known database structure."); *Capital One*, 792 F.3d at 1367 ("claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept."). Again, although BlackBerry makes these assertions about bandwidth savings, there are no limitations in the claims that specifically address these problems or would necessarily support these improvements. *Symantec*, 838 F.3d at 1316.

And also like the '182 Patent (and the '713 Patent in the *Facebook Case*), the fact that monitoring and controlling notifications occurs in response to a particular set of rules does not confer patent eligibility. *Id.* at 1316. Beyond requiring that adjusting notifications occur in response to these general, abstract rules, there are no claim limitations explaining *how* the various monitoring, determining, and adjusting steps are carried out.

Ultimately, because the '777 Patent claims are directed to solving a non-technological problem in a non-technological way, the claims fail to pass muster at *Mayo/Alice* Step One.

### 2. *Mayo/Alice* Step Two

At Step Two, BlackBerry's opposition merely repeats the same arguments about the

alleged technological improvements conveyed by Claims 1, 10, and 19 of the '777 Patent that BlackBerry presented at Step One. Docket No. 40 at 30. These arguments are unpersuasive. *BSG*, 899 F.3d at 1291; *see also id.* at 1290 ("it has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

The FAC similarly fails to present meaningful allegations to support an assertion that certain claim components, whether considered alone or as an ordered combination, are significantly more than routine, conventional, and well-understood. *See* FAC, Docket No. 36 ¶¶ 206-212. Instead, as with the '182 Patent, the FAC largely repeats the assertions found unpersuasive as a matter of law at *Mayo/Alice* Step One or otherwise provides conclusory assertions that the claims as a whole are not routine, conventional, or well-understood. This, however, is not the proper test. *BSG*, 899 F.3d at 1290 ("the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine . . . . After identifying an ineligible concept at step one, we ask at step two '[w]hat else is there in the claims before us?'" (citations omitted).).

Because the Court finds that Claims 1, 10, and 19 of the '777 Patent are drawn to an abstract idea and there are no well-pled factual allegations in the FAC to support an assertion that the claim components, considered individually and as an ordered combination, recite significantly more than routine, conventional, or well-understood material, the Court would **GRANT** Twitter's motion as to Claims 1, 10, and 19 of the '777 Patent and accordingly find that BlackBerry's infringement claims with respect to the '777 Patent must be dismissed.

D. Whether Leave To Amend Should Be Granted

In the conclusion section of its opposition, BlackBerry states: "If the Court were inclined to grant any part of the motion, BlackBerry requests leave to amend its complaint. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Aatrix*, 882 F.3d at 1128." Docket No. 40 at 30. Twitter does not respond to this request in its reply brief. Although the Court is not particularly persuaded that BlackBerry will be able to offer well-pled factual allegations that would support the patent eligibility of the asserted claims of the '182 and '777 Patents, particularly because Twitter has not responded to BlackBerry's request, BlackBerry will be permitted to file an amended complaint for the narrow purpose of providing additional factual allegations for these two patents. If BlackBerry opts to do so, it must file its amended complaint

within 14 days of a final ruling on Twitter's motion to dismiss.

## IV. Conclusion

Based on the foregoing, the Court would:

- Specifically incorporate by reference the analysis provided in each of its other § 101 rulings in the *Facebook Case* regarding the '351 and '929 Patents, and for the same reasons discussed in those rulings would **GRANT WITH PREJUDICE** Twitter's motion to dismiss as it relates to the '351 and '929 Patents.

- Specifically incorporate by reference the analysis provided in each of its other § 101 rulings in the *Facebook Case* regarding the '120 Patent, and for the same reasons discussed in those rulings would **DENY** Twitter's motion to dismiss as it relates to the '120 Patent.

- Specifically incorporate by reference the analysis provided in each of its other § 101 rulings in the *Facebook Case* regarding the '120 Patent, and for the same reasons discussed in those rulings would **DENY WITHOUT PREJUDICE** Twitter's motion as to the '089 Patent.

- **DENY WITHOUT PREJUDICE** Twitter's motion as to the '059 Patent.

- **GRANT** Twitter's motion as to Claims 1 and 4 of the '182 Patent and find that BlackBerry's infringement claims with respect to the '182 Patent must be dismissed.

- **GRANT** Twitter's motion as to Claims 1, 10, and 19 of the '777 Patent and find that BlackBerry's infringement claims with respect to the '777 Patent must be dismissed.

- Permit BlackBerry to file an amended complaint for the narrow purpose of providing additional factual allegations with respect to the '182 and '777 Patents. If BlackBerry opts to do so and unless another deadline is provided at the hearing, BlackBerry must file its amended complaint within 14 days of the filing of this final ruling on Twitter's motion to dismiss.